UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

HAIDER FARUK LANIA,

Petitioner,

v.

WARDEN, CENTRAL VALLEY ANNEX, et al.,

Respondents.

No. 1:26-cv-03701-DC-CSK (HC)

ORDER DENYING PETITIONER'S MOTION FOR A TEMPORARY RESTRAINING ORDER

(Doc. No. 14)

This matter is before the court on Petitioner's motion for a temporary restraining order. (Doc. No. 14.) For the reasons explained below, the court will deny Petitioner's motion for a temporary restraining order.

## BACKGROUND

### A. Factual Background

Petitioner Haider Faruk Lania is a native and citizen of Pakistan. (Doc. No. 1 at ¶ 9.) Petitioner lawfully entered the United States in 2013 pursuant to a B-2 nonimmigrant visitor visa. (*Id.* at ¶ 15.) Petitioner has resided continuously in the United States since that time. (*Id.* at ¶¶ 16–19.) Petitioner has consistently complied with government appointments and requirements since his entry. (*Id.* at ¶ 20.)

On March 24, 2026, Petitioner was arrested in Texas and charged with assault causing bodily injury. (*Id.* at ¶ 22.) On April 23, 2026, the Collin County Criminal District Attorney

dismissed Petitioner's charges in the interest of justice. (*Id.* at ¶ 23.) Petitioner has no criminal history apart from this dismissed charge. (*Id.* at ¶ 24.)

On April 24, 2026, Petitioner was transferred from the Collin County Detention Center to U.S. Immigration and Customs Enforcement ("ICE") custody. (*Id.* at ¶ 25.) Petitioner was provided a custody redetermination hearing on May 7, 2026, thirteen days after his detention by immigration authorities. (*Id.* at ¶ 27.) Following that hearing, the immigration judge issued an order denying Petitioner's request for bond, finding that he was a flight risk and danger to the community. (*Id.* at ¶ 29.)

In 2015, Petitioner's father applied for asylum and included Petitioner and other family members on his application as derivative applicants. (Doc. No. 14-1 at 2.) On August 5, 2026, while Petitioner was in ICE detention, an immigration judge granted asylum to Petitioner's father, and derivative asylum to Petitioner's father's wife and Petitioner's brother. (*Id.*) The order granting asylum omitted Petitioner because he was no longer included on the immigration docket for his father's asylum proceedings and instead had his own separate docket for immigration proceedings pertaining to his detention. (*Id.*) Petitioner's severance from his father's asylum application is not formally reflected on his immigration record. (*Id.*) Petitioner alleges that the separate docketing resulting from his detention is the only possible reason that Petitioner was not granted derivative asylum along with his family. (*Id.* at 6.)

**B. Procedural Background**

Several months before Petitioner's father's asylum application was granted, on May 13, 2026, Petitioner filed the habeas petition initiating this action. (Doc. No. 1.) In his habeas petition, Petitioner argues that his detention without a pre-deprivation bond hearing violated his: (1) Fifth Amendment right to Procedural Due Process; (2) Fifth Amendment right to Substantive Due Process, (3) statutory rights under the Immigration and Nationality Act ("INA"); (4) Fifth Amendment right to Procedural Due Process in relation to alleged deficiencies in his post-deprivation bond hearing; and (5) Fourth Amendment right against unreasonable seizure. (*Id.* at 15–19.)

On May 14, 2026, Petitioner filed a motion for preliminary injunction in which he argued

that his detention without a pre-deprivation bond hearing violated his constitutional right to due process, and that the post-deprivation bond hearing provided to him did not pass constitutional muster. (Doc. No. 2.)

On June 17, 2026, the court denied Petitioner's motion for a preliminary injunction, finding that because Petitioner's arrest for assault constituted a non-pretextual basis for his immigration detention, he was entitled a post-deprivation bond hearing rather than immediate release, and he had already received that bond hearing. (Doc. No. 8.) The court further found that, to the extent Petitioner challenged the sufficiency of the evidence presented at his post-deprivation bond hearing, that argument was properly raised in the Board of Immigration Appeals, not this court. (*Id.*)

On June 19, 2026, Petitioner appealed the court's order denying his motion for a preliminary injunction to the Ninth Circuit Court of Appeals. (Doc. No. 9.) That appeal remains pending.

On August 10, 2026, Petitioner filed the pending motion for a temporary restraining order in which he contends that the only reason he was not granted derivative asylum is his continuing detention, and that Respondents "cannot use detention to separate an included derivative child from the principal proceeding, rely on the resulting absence of a derivative order to prolong his custody, and call that custody removal-related." (Doc. No. 14-1 at 2.)

On August 13, 2026, Respondents filed an opposition to Petitioner's motion in which they argue that Petitioner fails to demonstrate that Petitioner was improperly severed from his father's asylum application upon his detention, and that regardless the propriety of that severance is properly litigated in the Board of Immigration Appeals, not this court. (Doc. No. 16.)

On August 14, 2026, Petitioner filed a reply thereto in which he argues that he does not ask this court to supervise his removal proceedings, only that the court prevent Respondents from continuing Petitioner's detention where that detention precludes him from asylum relief. (Doc. No. 17.) Petitioner attached to his reply a recording of the immigration court proceeding held on June 24, 2026, in which Petitioner's counsel requested that Petitioner's derivative asylum claim be considered together with his father's asylum claim. (Doc. No. 18.)

On August 16, 2026, Respondents filed a response to Petitioner's reply in which they argue that the court should strike the recording of the immigration court proceeding because "Petitioner does not explain why that evidence could not have been submitted with his moving papers, so that Respondents would have had a reasonable opportunity to confront it." (Doc. No. 19 at 1.) On that same day, Petitioner filed a response to Respondents' response in which he argues that the recording was provided in response to Respondents' argument that Petitioner had failed to provide any record of the alleged deficiencies in the immigration court proceedings.[1] (Doc. No. 20 at 2.)

## LEGAL STANDARD

Injunctive relief is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008) (citation omitted). The standard governing the issuing of a temporary restraining order is "substantially identical" to the standard for issuing a preliminary injunction. *Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.*, 240 F.3d 832, 839 n.7 (9th Cir. 2001). To obtain either form of injunctive relief, the moving party must show: (1) a likelihood of success on the merits; (2) a likelihood of irreparable harm to the moving party in the absence of preliminary relief; (3) that the balance of equities tips in favor of the moving party; and (4) that an injunction is in the public interest. *Winter*, 555 U.S. at 20 (2008). A plaintiff seeking a temporary restraining order bears the burden of proving these elements. *Klein v. City of San Clemente*, 584 F.3d 1196, 1201 (9th Cir. 2009).

A district court may consider "the parties' pleadings, declarations, affidavits, and exhibits submitted in support of and in opposition to the [motion for injunctive relief]." *Cal. Rifle & Pistol*

[1] The court will consider the recording of the bond hearing as evidence submitted by Petitioner in response to Respondents' argument that Petitioner had not provided sufficient evidence of the immigration court proceedings, as well as Respondents' objections to that newly submitted evidence. To the extent the parties' supplemental responses contain new arguments not directly relating to the recording or Respondents' objections to that evidence, the court will not consider those arguments. L.R. 230(m)(1) ("If new evidence has been submitted with the reply brief, the opposing party may file and serve . . . an objection to Reply Evidence stating its objections to the new evidence. The Objection to Reply Evidence may not include further argument on the motion.").

*Ass'n, Inc. v. L.A. Cnty. Sheriff's Dep't*, 745 F.Supp.3d 1037, 1048 (C.D. Cal. 2024); *see also Johnson v. Couturier*, 572 F.3d 1067, 1083 (9th Cir. 2009). Any evidentiary issues "properly go to weight rather than admissibility." *Am. Hotel & Lodging Ass'n v. City of Los Angeles*, 119 F.Supp.3d 1177, 1185 (C.D. Cal. 2015).

**ANALYSIS**

**A. Likelihood of Success on the Merits**

1. Procedural Due Process

Petitioner contends that his derivative asylum claim was severed from his father's asylum application solely because of Petitioner's ongoing immigration detention, and that the government's use of "detention to prevent [Petitioner's] participation in the proceeding that conferred asylum on his father and the other derivative riders," and subsequent "use [of] the resulting absence of a derivative order to prolong his confinement" constitutes a violation of his Fifth Amendment right to Procedural Due Process. (Doc. No. 14-1 at 8–10.) In their opposition, Respondents argue that by his motion, Petitioner seeks the court's determination that the immigration judge erred in severing Petitioner's derivative asylum claim from his father's asylum application, and critically, that the court lacks jurisdiction to make such a determination. (Doc. No. 16 at 3–6) (citing 8 U.S.C. § 1252(b)(9)). In his reply, Petitioner does not contend that the court has jurisdiction to review the immigration judge's exercise of discretion in adjudicating Petitioner's asylum application, but that "the habeas question is whether Respondents may continue physically imprisoning Petitioner when detention itself caused the procedural separation that deprived him of the family asylum grant and now materially impedes the administrative corrections Respondents insist he pursue." (Doc. No. 17 at 2.) At its core, Petitioner's argument is that the only reason he has not been granted derivative asylum is his ongoing immigration detention, and that it is not within the immigration court's discretion to serve as the sole impediment to administrative relief which Petitioner is statutorily entitled to pursue.

Petitioner's position is not supported by the record nor the regulations governing asylum eligibility. Petitioner's insistence that the immigration judge cited Petitioner's detention as the sole basis for considering his asylum claim separately from his father's application is not

supported by the record. At the hearing where Petitioner requested that his asylum claim be re-joined with his father's application, the immigration judge noted Petitioner's arrest on domestic violence related charges, noted that Petitioner's father does not have any criminal record, then emphasized that due to Petitioner's charge, "the court would need to determine whether [Petitioner] would . . . merit asylum in the court's discretion." (Doc. No. 17-1 at 12.) The immigration judge continued that she would not be able to make a determination as to Petitioner's eligibility for asylum on the record before her because she "need[ed] the entire criminal record," as Petitioner's criminal charge appeared to be "against a family member," and the judge was "not sure who the family member was." (*Id.* at 14.)

This inquiry is appropriate under the federal regulations governing asylum eligibility because an immigration judge must find a noncitizen ineligible for asylum if the immigration judge "knows or has reason to believe that the [noncitizen] has engaged . . . in acts of battery or extreme cruelty . . . upon a person, and committed by . . . an alien similarly situated to a spouse of the person under the domestic or family violence laws of the jurisdiction where the offense occurs." 8 C.F.R. § 1208.13(c)(6)(v)(A)(4). Petitioner does not address the effect his domestic violence charge has on his asylum eligibility nor why it would be improper for the immigration judge to obtain information relevant to that charge before determining his eligibility for asylum. Thus, the reason for the immigration judge to consider Petitioner's derivative asylum claim separately from his father's claim is not Petitioner's detention; it is the domestic violence charge that predicated Petitioner's immigration detention in the first place. Indeed, Petitioner's immigration counsel seems to concede that his continuing detention is not the sole impediment to his asylum claim. (*See* Doc. No. 17-1) (declaration from Petitioner's immigration counsel stating that Petitioner's "continued detention *materially affects* the administrative avenues available to address his derivative-asylum status" and that if Petitioner was released, she would "promptly *seek to* return his proceeding to the appropriate non-detained posture and request expedited adjudication of his derivative-asylum status") (emphasis added).

While Petitioner contends that a qualifying child such as Petitioner "generally receives the principal's asylum status," the statute he cites actually states that a derivative asylum applicant

"*may*, if not otherwise eligible for asylum under this section, be granted the same status as the" principal applicant. (Doc. No. 14-1 at 10) (citing 8 U.S.C. § 1158(b)(3)(A)) (emphasis added). Derivative asylum eligibility under § 1158 is therefore discretionary, not mandatory, for qualifying derivative applicants. *Doe v. Risch*, 398 F. Supp. 3d 647, 654 (N.D. Cal. 2019) ("The decision to grant or deny derivative asylum status is committed to agency discretion[] by [§ 1158]."). Thus, Petitioner's detention is not the sole impediment to his asylum eligibility, as his eligibility is discretionary and is impacted by his criminal history. This court does not have jurisdiction to weigh the evidence before—or not before—the immigration judge in determining whether it is sufficient to support Petitioner's asylum eligibility.

Further, the cases cited in Petitioner's motion do not support his argument. First, Petitioner cites *Maklad v. Murray*, No. 1:25-cv-00946-JLT-SAB, 2025 WL 2299376 (E.D. Cal. Aug. 8, 2025), as standing for the proposition that there existed "a serious risk of erroneous deprivation [where] detention caused dismissal of an I-589 and threatened derivative-asylum consideration." (Doc. No. 14-1 at 8.) However, in that case the court emphasized that "the government conceded that there were no changes in circumstances since the original determination that [the petitioner] does not pose a flight risk or a danger to the community" such that Petitioner's re-detention without a bond hearing was unconstitutional. *Maklad*, 2025 WL 2299376, at *3. Here, on the other hand, the court previously held that Petitioner's arrest on domestic violence related charges may constitute a changed circumstance warranting Petitioner's detention. (Doc. No. 8.) Further, in *Maklad* the petitioner's asylum application was denied upon her detention. *Maklad*, 2025 WL 229376, at *3. Here, on the other hand, Petitioner's asylum claim remains pending, albeit separately from his father's asylum claim. (Doc. No. 17-1 at 14–15). Thus, Petitioner has not been deprived of the ability to pursue his asylum claim, only the ability to pursue his asylum claim in the manner he prefers.

Second, Petitioner cites *Gonzalez v. Wesling*, No. 26-cv-00231-JJM-AEM, 2026 WL 1765871 (D.R.I. June 19, 2026), as standing for the proposition that "the right to pursue an agency-created immigration process is distinct from entitlement to the ultimate benefit" and that release is appropriate "where detention obstructed that process." (Doc. No. 14-1 at 8.) However,

in *Gonzalez*, the petitioner was detained by immigration authorities when he appeared to provide biometric data necessary to adjudicate his U-Visa application, and his detention necessarily precluded him from pursuing his U-Visa application. *Gonzalez*, 2026 WL 1765871, at *3. Here, on the other hand, Petitioner was detained immediately following his release from state incarceration for a criminal charge. He is still actively pursuing his derivative asylum claim, but the arrest which precipitated his immigration detention has also affected the procedure by which that claim is adjudicated.

Accordingly, because the immigration judge decided to consider Petitioner's derivative application separately from his father's asylum application due to Petitioner's arrest on domestic violence related charges, not merely because of his detention, and because the court lacks jurisdiction to review the immigration judge's exercise of discretion in adjudicating Petitioner's asylum application separately from his father's application, Petitioner has not demonstrated a likelihood of success on the merits of his procedural due process claim.

*2. Substantive Due Process*

Petitioner next argues that he "is likely to succeed on his substantive-due-process claim because his continued detention no longer advances any legitimate civil purpose and instead perpetuates the administrative obstacle that detention itself created." (Doc. No. 14-1 at 11.) However, as discussed above, Petitioner's arrest on domestic violence related charges, not his immigration detention following that arrest, created the "administrative obstacle" of which he complains. Further, as the court emphasized in denying Petitioner's first motion for a temporary restraining order, shortly after Petitioner's detention an immigration judge found that his continued detention advanced legitimate purposes as Petitioner constituted a flight risk and a threat to community safety. (Doc. No. 8.) To the extent Petitioner disagrees with that determination, that argument is properly raised in the Board of Immigration Appeals, not this court. *See Leonardo v. Crawford*, 646 F.3d 1157, 1160–61 (9th Cir. 2011). Accordingly, Petitioner has not demonstrated a likelihood of success on the merits of his substantive due process claim.

/////

## CONCLUSION

For the reasons explained above,

1. Petitioner Haider Faruk Lania's motion for a temporary restraining order (Doc. No. 14) is DENIED; and
2. This matter is REFERRED to the assigned magistrate judge for further proceedings.

IT IS SO ORDERED.

Dated: **September 4, 2026**

Dena Coggins
United States District Judge